**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 11 2013, 9:29 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES B. STUDABAKER, II, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 90A04-1303-CR-126 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WELLS CIRCUIT COURT
The Honorable James A. Heimann, Special Judge and Senior Judge
Cause No. 90C01-0907-FB-21

December 11, 2013

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

James B. Studabaker, II, appeals his convictions by jury of two counts of sexual misconduct with a minor as class B felonies and the sentence imposed thereon. He argues that 1) the trial court erred in admitting evidence; 2) the trial court erred in denying his motion for a mistrial; 3) there is insufficient evidence to support his convictions; and 4) the trial court erred in sentencing him.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Studabaker and M.E. met in March 2009 when Studabaker was twenty-three years old and M.E. was fifteen years old. M.E. told Studabaker her age and grade in school. One week later, M.E. told her mother that she was going to spend the night with a friend. Instead, Studabaker and a friend picked up M.E. at her house in Huntington and drove her to the friend's house in Bluffton. Several people gathered at the home to socialize that evening, and Studabaker told M.E. that his friends all knew how old she was. Later that night, Studabaker and M.E. engaged in sexual intercourse in the bathroom and on the living room floor at his friend's house and later spent the night at Studabaker's mother's house. M.E. told Studabaker's mother that she was nineteen years old.

The following month, M.E. again told her mother that she was going to spend the night with a friend. Instead, another of Studabaker's friends drove M.E. to Bluffton, where she and Studabaker engaged in sexual intercourse. M.E. eventually told her mother that she spent the weekend with twenty-three-year-old Studabaker and had sexual intercourse with him multiple times. M.E.'s mother contacted the police.

Bluffton Police Department Officer Greg Steele interviewed Studabaker on June 5,

2009. Studabaker initially denied having sexual contact with M.E. After he failed a polygraph examination, Studabaker admitted he had engaged in a sexual relationship with M.E. The State charged him with two counts of sexual misconduct with a minor, both as class B felonies, and with being an habitual offender based upon his prior convictions for child molesting and failing to register as a sex offender. Officer Steele also interviewed M.E., who stated that she engaged in sexual intercourse with Studabaker.

At some point after the charges were filed, Studabaker sent M.E. a letter from jail. In the letter, which referenced how Studabaker and M.E. met and mentioned M.E.'s mother by name, Studabaker asked M.E. to say that nothing happened between them even though the State might "threaten [her] with perjury [and she] might get a year probation." State's Exhibit 1. Studabaker also told M.E. if the two were going to communicate, they "need[ed] to do it smart [with] [n]o return addresses, no full names." Id. Studabaker signed the letter and put the jail address on it.

In December 2010, M.E. testified in a deposition that she told Studabaker that she was fifteen years old when they met. In addition, she testified that Studabaker told her that all of his friends knew how old she was.

M.E. and Studabaker resumed their relationship in February 2012 when M.E. was eighteen years old. They had a child together who was born in November 2012. Studabaker's trial began in 2013. At that time, M.E. and Studabaker were no longer romantically involved, but M.E. admitted that she did not want to see Studabaker go to jail because he is the father of her daughter and helps her raise the child. At trial, M.E. testified that she could not remember what happened in 2009 because she was using drugs at the time.

3

She further testified that she had no recollection of what she had told Studabaker regarding her age in March and April 2009. The State and Studabaker agreed that M.E. was "unavailable" for the purposes of Ind. Evidence Rule 804(a)(3). M.E.'s December 2010 deposition was therefore read to the jury during M.E.'s testimony.

During direct examination of M.E.'s mother during the State's case-in-chief, the court admitted into evidence over Studabaker's objection the letter Studabaker sent to M.E. while he was in jail. At the conclusion of the State's evidence, Studabaker testified and admitted that he had engaged in a sexual relationship with M.E. He further explained, however, that M.E. had told him she was eighteen years old and he had no reason not to believe her. Studabaker further admitted that he lied to Officer Steele about his relationship with M.E. and did not know that it was a defense if he reasonably believed that M.E. was of legal age to consent.

During cross examination, the following exchange occurred between the deputy prosecutor and Studabaker:

> Prosecutor: Now you claim today that you did not ever know that it's a defense that you believed that the person was at least 16 years of age, right?
>
> Studabaker: True.
>
> Prosecutor: And yet in your written statement you stressed that, you talk quite a bit about the fact you thought she was 18. Why stress all that if you didn't think it was a defense?
>
> Studabaker: Again, if I answer that would contaminate the jury and I would be more than happy to answer that if you ask the jury to leave.
>
> Prosecutor: Judge, I'm not sure how to respond to that.
>
> Court: Ask him to answer the question and see if he is obligated to answer.

4

Prosecutor: I'd like you to answer the question . . .

Studabaker: Well it was because I was on probation at the time, parole, scratch that, parole.

Studabaker's counsel immediately moved for a mistrial, which the trial court denied. Specifically, the court explained that the deputy prosecutor did not intentionally elicit Studabaker's response. In addition, Studabaker's counsel admitted that he knew what Studabaker's answer would be but did not object or ask for a sidebar. The court offered to give the jury a curative instruction to disregard the evidence, which Studabaker declined.

The jury convicted Studabaker of both counts of sexual misconduct, and Studabaker stipulated to his status as an habitual offender. At the sentencing hearing, the court identified several aggravating factors, including Studabaker's criminal history, which included five convictions for class C felony child molesting and two felony convictions for failure to register as a sex offender as well as repeated probation and parole violations. The victims of the child molesting convictions were children enrolled in Studabaker's mother's daycare. M.E.'s mother completed a victim's impact statement, which was included in Studabaker's Presentence Investigation Report. According to M.E.'s mother, M.E.'s behavior changed drastically as a result of these offenses. Specifically, M.E.'s mother explained as follows:

[M.E.] became angry, attitude was that of whatever. She began having sex with anyone anywhere even those she didn't know. She refused counseling, refused to talk to anyone. I believe this incident brought her to the situation she is in now, juvenile home with further sentencing ahead.

Appellant's Appendix at 221.

The court sentenced Studabaker to twenty years for each of the two class B felony

5

convictions, sentences to run concurrent with each other, and to an additional fixed term of thirty years for the habitual offender enhancement, for a total sentence of fifty years. Studabaker appeals his convictions and sentence.

## DISCUSSION

### I. Admission of Evidence

Studabaker raises two issues regarding the admission of evidence. Specifically, he contends that the trial court erred in admitting into evidence the letter he sent to M.E. from prison as well as Officer Steele's testimony that M.E. told him that she engaged in sexual intercourse with Studabaker.

Admission of evidence is within the sound discretion of the trial court. Davis v. State, 907 N.E.2d 1043, 1053 (Ind. Ct. App. 2009). We will reverse a trial court's decision to admit evidence only if there is an abuse of discretion. Id. An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before the court. Id.

As to the letter, Studabaker argues that it was not properly authenticated. Indiana Evidence Rule 901 governs authentication or identification of exhibits and provides in relevant part as follows: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evidence demonstrating a reasonable probability that the exhibit is what it is claimed to be and that its condition is substantially unchanged as to any material feature is sufficient to establish the condition precedent to admissibility. Taylor v. State, 943 N.E.2d 414, 418 (Ind. Ct. App. 2011), trans. denied.

Thomas v. State, 734 N.E.2d 572 (Ind. 2000), is instructive regarding the authentication of letters. There, Thomas argued that the trial court erred by admitting into evidence a letter he had written to the trial court accepting responsibility for the murder with which he had been charged. Thomas argued that the letter lacked authentication. The Indiana Supreme Court noted that Thomas's name was on the return address, and the return address was the Arizona State Prison. Thomas was incarcerated at the Arizona State Prison at the time the letter was written. Further, in the letter, Thomas demonstrated a knowledge of witnesses and events related to the crime that were not likely known by anyone in that prison except Thomas. Based on this evidence, the Indiana Supreme Court concluded that the State laid an adequate foundation to authenticate the letter. 734 N.E.2d at 574.

Here, as in Thomas, Studabaker's name and the address of the Wells County jail were on the letter. Studabaker was incarcerated at the Wells County jail when the letter was written, and his cellmate's name was on the return address of the envelope with an Illinois address. In the letter, Studabaker wrote details and demonstrated a knowledge of the victim and the crimes that were not likely known by anyone in the jail except Studabaker. The letter was properly authenticated, and the trial court did not err in admitting it into evidence.

Studabaker also argues that the trial court erred in admitting into evidence Officer Steele's testimony that M.E. told him that she engaged in sexual intercourse with Studabaker. Specifically, Studabaker claims that this evidence is inadmissible hearsay. However, error, if any, caused by the admission of evidence is harmless error for which we will not reverse a conviction if the erroneously admitted evidence was cumulative of other evidence properly admitted. Payne v. State, 854 N.E.2d 7, 17 (Ind. Ct. App. 2006). Here, Officer Steele's

testimony that M.E. told him she had engaged in sexual intercourse with Studabaker was merely cumulative of other testimony. Specifically, M.E.'s mother testified M.E. told her she had sexual intercourse with Studabaker, M.E. testified that she had sexual intercourse with Studabaker, and Studabaker even admitted that he had sexual intercourse with M.E. Because Officer Steele's testimony was merely cumulative of this other properly admitted evidence, we find no reversible error. See id.

Further, even if the trial court erred in admitting this evidence, we disregard error in the admission of evidence unless it affects the substantial rights of a party. Simmons v. State, 760 N.E.2d 1154, 1161 (Ind. Ct. App. 2002). An error will be found harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor that it did not affect the substantial rights of a party. Id. In determining whether error in the admission of evidence affected the defendant's substantial rights, this Court must assess the probable impact of that evidence upon the jury. Craig v. State, 630 N.E.2d 207, 211 (Ind. 1994). Here, Studabaker admitted he had sexual intercourse with M.E. The sole contested issue at trial was whether Studabaker reasonably believed that M.E. was at least sixteen years old when they had sexual intercourse. Therefore, the State is correct that M.E.'s statements to Officer Steele were not relevant to Studabaker's mistaken belief defense, and therefore would not have affected his substantial rights.

## II. Mistrial

Studabaker also argues that the trial court erred in denying his motion for a mistrial. A mistrial is an extreme remedy and should be used only where no other curative measure will rectify a situation. Shriner v. State, 829 N.E.2d 612, 618 (Ind. Ct. App. 2005). A

8

mistrial should be granted where the accused, under all the circumstances, has been placed in a position of grave peril to which he should not have been subjected. Id. We afford great deference to a trial court's decision whether to grant a mistrial because the trial judge is in the best position to gauge the surrounding circumstances of an event and its impact on the jury. Id. We therefore review a trial court's decision whether to grant a mistrial for an abuse of discretion. Id.

Studabaker's argument fails for two reasons. First, a timely and accurate admonition is presumed to cure any error in the admission of evidence. Gamble v. State, 831 N.E.2d 178, 184 (Ind. Ct. App. 2005), trans. denied. Here, the trial court offered to give a curative instruction, but Studabaker refused it. Had Studabaker accepted the instruction, the trial court would have had the opportunity to admonish the jury and presumably cure any error. See id. By not accepting the admonishment when he had the opportunity, Studabaker essentially invited the error. See id. A party may not invite the error, and then later argue that the error supports reversal because error invited by the complaining party is not reversible error. Id. Because invited errors are not subject to appellate review, this issue is waived. See id. (waiving the issue where defense counsel failed to request an admonishment).

Second, we have previously stated that a defendant who creates his own cause for a mistrial presents no error. Id. Here, Studabaker's counsel admitted that he knew Studabaker would answer that he was on parole but failed to object to the deputy prosecutor's question or request a sidebar. Because he created his own cause for mistrial when he failed to object or

9

request a sidebar, Studabaker presents no error. We find no error in the trial court denying Studabaker's motion for a mistrial.

## III. Sufficiency of the Evidence

Studabaker next argues that there is insufficient evidence to support his convictions of sexual misconduct as class B felonies. Our standard of review when the sufficiency of the evidence is challenged is well settled. Warren v. State, 701 N.E.2d 902, 906 (Ind. Ct. App. 1998), trans. denied. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Id. Rather, we look to the evidence and reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. Id.

To convict Studabaker of sexual misconduct with M.E., the State had to prove that Studabaker performed sexual intercourse with M.E. when Studabaker was at least eighteen years of age, and when M.E. was at least fourteen years of age, but less than sixteen years of age. See id. It is a defense that the accused person reasonably believed the child was at least sixteen years at the time of the conduct. Ind. Code § 35-42-4-9(c). Pursuant to this "mistaken belief" defense, the accused admits all elements of the offense but proves circumstances that excuse the defendant from culpability. Warren, 845 N.E.2d at 1069.

Here, Studabaker claims that he has proved by a preponderance of the evidence his reasonable belief that M.E. was at least sixteen years old. Specifically, he points out that he testified that M.E. told him that she was eighteen years old, and he had no reason to disbelieve her. He also points out that M.E. appeared to be at least sixteen years old when

they engaged in sexual intercourse, and that she was allowed to spend the weekend with him, which suggested she was an adult. M.E., however, testified in her deposition that she told Studabaker that she was fifteen years old before they engaged in sexual intercourse. Studabaker's argument is nothing more than an invitation for us to reweigh the evidence, which we cannot do. See id. There is sufficient evidence to support Studabaker's convictions.

## IV. Sentence

Lastly, Studabaker argues that the trial court erred in sentencing him. Specifically, he argues that his fifty-year aggregate sentence is inappropriate, and that the trial court failed to specifically assign the habitual offender enhancement to one of his two convictions. We address each of his contentions in turn.

Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The burden is on the defendant to persuade the appellate court that his sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Here, our review of the nature of the offense reveals that twenty-three-year-old Studabaker had a sexual relationship with the victim that he knew was only fifteen years old. He picked her up at her home on two separate occasions, transported her to another county where he kept her for the weekend, and engaged in sexual intercourse with her. Studabaker encouraged M.E. to be dishonest by requesting that she tell his mother she was nineteen years old so they could stay at her house. Even after the charges were filed, Studabaker continued

11

to manipulate M.E. by urging her to commit perjury and risk prosecution herself. Finally, although M.E. did not suffer physical injuries as a result of the offenses, her behavior changed dramatically, she became promiscuous, and she refused to talk to anyone.

In addition, we agree with the State that Studabaker's character is revealed by his significant criminal history at the young age of twenty-three. At the time he committed these offenses, he was a seven-time convicted felon with five prior felony convictions for child molesting and two prior felony convictions for failing to register as a sex offender. The child molesting convictions relate to Studabaker's conduct with children in his mother's day care. Although he was a juvenile when he committed these offenses, he was waived to adult court and pleaded guilty to five counts of class C child molesting. While on probation for those offenses, he was twice-charged with failure of a sex offender to register. He had been discharged on parole less than a month when he committed the offenses in this case. He also had a pending theft charge. His former contacts with the law have not caused him to reform himself. See Jenkins v. State, 909 N.E.2d 1080, 1086 (Ind. Ct. App. 2009), trans. denied.

Under these circumstances and after due consideration of the trial court's decision and of the record, we conclude that Studabaker has not sustained the burden of establishing that his sentence is inappropriate in light of the nature of the offense and his character.

Studabaker also argues that the trial court failed to specifically assign the habitual offender enhancement to one of his two convictions. In the event of simultaneous multiple felony convictions and a finding of habitual offender status, trial courts must impose the resulting penalty enhancement upon only one of the convictions and must specify the conviction to be so enhanced. Greer v. State, 680 N.E.2d 526, 527 (Ind. 1997). However, in

12

Carter v. State, 686 N.E.2d 834, 839 (Ind. 1997), where the Indiana Supreme Court affirmed both class A felony convictions in the case and the trial court ordered the forty-five year sentences to run concurrently, the Indiana Supreme Court declined to remand the case to the trial court for resentencing to apply the thirty-year habitual offender enhancement to only one of the two class A felony convictions. Here, as in Carter, Studabaker was convicted of two class B felony convictions, and the trial court ordered the two twenty-year sentences to run concurrently. We therefore decline to remand the case to the trial court for resentencing to apply the thirty-year habitual offender enhancement to only one of the two class B felony convictions. See Carter. The trial court did not err in sentencing Studabaker.

## CONCLUSION

For the foregoing reasons, we affirm Studabaker's convictions and sentence.

Affirmed.

NAJAM, J., and MATHIAS, J., concur.